497 So.2d 366 (1986)
Ron FOGAL and Marie Fogal, Plaintiffs-Appellees,
v.
Carlton James BOUDREAUX and Mary Ann Boudreaux, Reinauer Real Estate Corporation and Merrill Lynch Relocation Management, Inc., Defendants-Appellants.
No. 85-1241.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
*367 Book and Beverung, Steven Beverung, Lake Charles, for plaintiffs-appellees.
Stockwell and Assoc., William E. Shaddock, William B. Monk, Lake Charles, for defendants-appellants.
John L. Olivier of Olivier and Brinkhaus, Sunset, Godwin, Painter, Roddy, Lorenzi & Watson, Thomas L. Lorenzi, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
Ron Fogal and his wife filed this redhibitory action against Carlton James Boudreaux, and his wife, Mary Ann Boudreaux, Merrill Lynch Relocation Management, Inc. (Merrill Lynch), and Reinauer Real Estate Corporation (Reinauer) seeking a rescission of the sale of their home located in Sulphur because the home was subject to flooding. The Boudreauxs filed a third party demand against Merrill Lynch; Reinauer filed a cross-claim against the Boudreauxs; and Merrill Lynch crossclaimed both the Boudreauxs and Reinauer. After trial on the merits, the trial court found in favor of the Fogals and against the defendant, Merrill Lynch, on the principal demand, and dismissed the Fogals claim against the Boudreauxs and Reinauer, and, held in favor of Merrill Lynch on its crossclaim against the Boudreauxs.
The trial court found Merrill Lynch to be the owner-seller of the house and granted a rescission of the sale, return of all expenses of the sale and expenses of preservation of the property, less a $12,600 credit for use of the house.
Merrill Lynch has appealed presenting three issues for our review as follows: (1) whether Merrill Lynch was the owner-seller of the residence or a broker for the Boudreauxs; (2) whether plaintiffs knew or should have known of the flooding problems; and (3) whether rescission of the contract of sale is the appropriate remedy. The Fogals answered the appeal seeking to delete the $12,600 credit allowed by the trial court thereby increasing the amount awarded for damages to $24,646.49. We affirm.

FACTS
The facts of this case are thoroughly set forth in the learned trial judge's well considered *368 written reasons for judgment which we quote herein:
"The defendants, Carlton James Boudreaux et ux, purchased the subject property in June of 1978. Between June of 1978 and August of 1981, when they vacated the property, water had entered the residence on three occasions. On one occasion the water was at least one foot deep. Testimony also reveals that on another occasion water would have entered the home but for the Boudreauxs sandbagging around the house. On several other occasions water came up to the carport, without actually entering the house while the Boudreauxs had possession of the home.
In the summer of 1981, Carlton Boudreaux was transferred to Lafayette, Louisiana. Mr. Boudreaux's employer, Arco, had an agreement with Merrill Lynch Relocation Management, Inc. wherein Merrill Lynch would purchase the transferred employee's home at its appraised value. Prior to availing himself of this option, Mr. Boudreaux listed the property with Reinauer Real Estate Corporation.
Unable to sell the home on their own, the Boudreauxs accepted an offer to sell to Merrill Lynch for the price of $61,950.00. This sale was evidenced by a notarized contract of sale by the Boudreauxs on July 10, 1981. On the same date the Boudreauxs executed a power of attorney naming J. Fred Patin, who represented Merrill Lynch, as their duly authorized agent and attorney-infact to sell the property for such price and on such terms and conditions at his (the agent's) sole descretion [sic] deemed proper. Shortly thereafter, the Boudreauxs were paid their equity in the house. From that point on the Boudreauxs did not pay any more mortgage notes on the house, no taxes, no insurance, nor did they have any other contact whatsoever with Merrill Lynch.
Merrill Lynch then listed the property with Reinauer Real Estate.

In March of 1982 the plaintiffs were seeking to purchase a home. They contacted Reinauer Real Estate through their agent Miss Huval. They inquired about flooding. She checked back with her company and then told the plaintiffs the property did not flood. Thereafter, the plaintiffs decided to purchase the property, and executed a purchase agreement, which was accepted by Merrill Lynch as owner. On May 7, 1982, the sale was closed at the office of J. Fred Patin. Mr. Patin, who had been engaged by Merrill Lynch, at their direction executed a cash deed to the plaintiffs in his capacity as agent for the Boudreauxs. Subsequently the plaintiffs closed their mortgage loan with Louisiana Savings Association on the same day. The sale price was $58,900.00.

Within a few days of moving into the home, water came up to the front door, entered the house and got the living room carpet wet. Later in December of 1982, the water came up again and entered every room of the house. Also in April of 1983, the water came up to the house, without actually entering, causing the Fogals to take measures to protect the contents of the home. On other occasions water came up into the yard but did not enter the house.
It is clear from the evidence that water entered the subject property at least five times since June of 1978. On one other occasion sandbags prevented water from entering the house. There were other occasions when the water came close to entering the house. There is some evidence that the ditches were cleaned and a drainage lateral was cleared but apparently this had no helpful effect on the flooding problem in this neighborhood."

STATUS OF MERRILL LYNCH
Merrill Lynch contends that the Fogals had no cause of action in redhibition against Merrill Lynch because it acted only as a broker in the transaction. The record *369 does not support this contention and clearly supports that Merrill Lynch acquired the property from the Boudreauxs as owner.
The record shows a contract of sale from the Boudreauxs to Merrill Lynch for the consideration of $61,950, dated July 10, 1981. Merrill Lynch did not record this instrument of record. Merrill Lynch listed the house with Reinauer and in their agreement Merrill Lynch was referred to as seller. Upon the contract of sale from the Boudreauxs to Merrill Lynch, the Boudreauxs were divested of any indicia of ownership in the house and all rights, title and interest in the property were acquired by Merrill Lynch as owners. The record is void of any evidence that Merrill Lynch acted merely as a broker. The trial court clearly summarizes Merrill Lynch's status in its written reasons:
"Merrill Lynch entered into a purchase agreement with the Boudreauxs', agreed upon a price, paid the price, paid all monthly mortgage notes thereafter, paid the taxes, paid the insurance, and from all observations was the owner except, as to third parties, there was no recordation of a transfer of title. Yet, had Mr. Boudreaux tried to regain title, Merrill Lynch could have resisted and been successful because the Boudreauxs' had divested themselves of any interest in the property. Had the home burned, Mr. and Mrs. Boudreaux could not have collected on the hazard insurance because they had no insurable interest. The only insurable interest was in Merrill Lynch."
Merrill Lynch urges Guidry v. Barras, 368 So.2d 1129 (La.App. 3rd Cir.1979) in support of its contention. Guidry v. Barras, supra, is not applicable to the present case. Guidry concerns the obligation and liabilities of a realtor. The issue before us is whether the owner-seller can qualify as a broker and escape liability in redhibition.
Since Merrill Lynch failed to record their deed from the Boudreauxs, it would appear from the public records that the Boudreauxs were the last record holder of title. However, this disguise does not clothe Merrill Lynch with the status of broker, when in fact it is the owner-seller of the property.
Accordingly, we find that the trial court correctly found Merrill Lynch was the owner, therefore, liable in redhibition to the Fogals.

REDHIBITION
In a redhibitory action the plaintiff must prove the thing sold contained a hidden defect which was not apparent by ordinary inspection and which rendered the thing unfit for its intended use or so imperfect that the purchaser would not have bought it had he known of the defect. LSA-C.C. Arts. 2520; 2521; Davis v. Davis, 353 So.2d 1060 (La.App. 2nd Cir.1977), writ refused, 355 So.2d 549 (La.1978). A house's susceptibility to flooding is a redhibitory defect. Davis v. Davis, supra. Apparent defects such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices. LSA-C.C. Art. 2521. The existence of a redhibitory defect is a question of fact which cannot be disturbed unless the record as a whole establishes that the finding is clearly wrong. Red Arrow Sales, Inc. v. Dixie Motors, Inc., 442 So.2d 570 (La.App. 1 Cir.1983); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Merrill Lynch contends that the trial court erred in failing to consider the evidence that the Fogals personally observed the first evidence of possible flooding problems before the sale, yet they failed to make a reasonable effort to further investigate the propensity of the house to flood, which they could have easily discovered from their future neighbors. Merrill Lynch argues that Mr. Fogal rode by the house after a heavy rain and observed the ditch full of water and on another occasion prior to the sale, Mr. Fogal saw water near the back door. The record shows that Reinauer's agent, Greta Huval, told Mr. Fogal that the water was caused by windblown rain and a faulty threshold which was subsequently repaired. The Fogals inquired of *370 Reinauer on at least two separate occasions whether the property flooded and were advised the property did not flood. The record is void of any evidence that would alert the Fogals to flooding conditions prior to the sale of the property. Therefore, we conclude that the trial court did not commit manifest error in its finding of fact that the flooding condition entitled the Fogals to recover.
Merrill Lynch further contends rescission of the sale is an inappropriate remedy under the circumstances. It urges that a reduction in the purchase price should have been allowed. It is within the discretion of the trial court to award either a rescission of the sale or a reduction in the purchase price in redhibitory actions. LSA-C.C. Art. 2543. This is essentially a factual determination best made by the trial court. Ark-La-Tex Builders & Realty v. Hoge, 344 So.2d 90 (La.App. 2nd Cir. 1977). The Fogals testified that the susceptibility of flooding rendered the house so totally useless and inconvenient they would not have purchased the property had they known of the flooding defect. Although there was evidence the house experienced a twenty percent (20%) reduction in value due to flooding, the trier of fact determined plaintiffs were entitled to rescission of the sale and not a reduction in the purchase price. This factual finding will not be disturbed on appeal absent a showing of manifest error. Arceneaux v. Domingue, supra.
In answer to the appeal, the Fogals contend the trial court erred in allowing Merrill Lynch a credit for the fair market value of the house in the amount of $200 per month.
A credit for use is not automatically granted where rescission of the sale is ordered. Where the purchaser of a defective thing derives some benefit from the thing prior to its return to the seller, it is proper to award a credit for use in spite of any defects. LSA-C.C. Art. 2531; Alexander v. Burroughs Corp., 359 So.2d 607 (La. 1978).
After carefully reviewing the record, we find no abuse of discretion in the credit for use award.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant.
AFFIRMED.